UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| CHARLOTTE A. WHITEHOUSE ) | |
| ) | |
| v. ) | NO. 2:04-CV-409 |
| ) | |
| METROPOLITAN LIFE INSURANCE ) | |
| COMPANY ) | |

**MEMORANDUM OPINION**

This is an action for long-term disability benefits under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, brought by Charlotte A. Whitehouse, a former employee of NCR Corporation [NCR] against Metropolitan Life Insurance Company [MetLife], administrator of the long-term disability benefits plan. The action is now before this court on the plaintiff's motion for a judgment on the pleadings and the defendant's motion for summary judgment on the basis of the Administrative Record [AR].

The court notes at the outset that the policy language gives discretionary authority to MetLife to determine eligibility for benefits and to interpret the terms and provisions of the policy. [Summary Plan 51, hereinafter "Plan"]. Accordingly, the facts of this case will be reviewed on an abuse of discretion standard. In order to prevail under this standard, Ms. Whitehouse must prove not only that the company's

benefit determination was incorrect but that its decision was arbitrary and capricious.

NCR's long-term disability plan provides that in order to receive disability benefits for the first 12 months, you must "have a bodily injury or illness which prevents you from performing the duties of **your** job." [Plan 4]. To receive disability benefits beyond the first 12 months, you must "be unable to perform the duties of **any** job for which you are reasonably suited by your education, training or experience." [*Id*.]. MetLife administers the above plan. [Plan 51].

Ms. Whitehouse worked at NCR as a cassette assembler. [AR 618]. She applied for long-term disability benefits on August 20, 1997, because of lower back pain. [AR 524]. In the following months, Ms. Whitehouse underwent several surgeries on her back. [AR 428, 429, 448]. Ms. Whitehouse received short-term benefits during this time. [AR 524-25]. In March 1999, MetLife approved long-term disability benefits for Ms. Whitehouse based upon a finding that she could no longer perform any job because of anxiety and depression. [AR 314]. MetLife also found that Ms. Whitehouse's physical problems were no longer disabling. [AR 313]. Ms. Whitehouse was notified at that time that she should "expect to receive, minimally, an annual request for current medical documentation to support [her] disability." [AR 311-12]. On March 8, 2001, MetLife contacted Ms. Whitehouse *via* facsimile to state that her current psychiatrist needed to send in some

2

documentation. [AR 171]. On March 30 and April 12, 2001, MetLife contacted her again to state that no records or documentation had been forthcoming. [AR 161, 170]. On August 3, 2001, MetLife informed Ms. Whitehouse that her long-term benefits had been terminated because the psychiatric records requested had not been provided. [AR 160-61]. Instead, Ms. Whitehouse had provided a form from a neurosurgeon, which indicated Ms. Whitehouse could perform gainful employment. [AR 159]. Ms. Whitehouse appealed her benefits denial, and MetLife upheld the denial in September 2001. [AR 80-81, 88].

This court agrees with MetLife and its decision that Ms. Whitehouse no longer qualified for long-term disability benefits. Ms. Whitehouse pinned her disability on three medical conditions: back pain; psychiatric issues; and, a benign pituitary tumor. The latest information MetLife received concerning Ms. Whitehouse's back pain indicated that in March 2001, Ms. Whitehouse was able to work and should avoid prolonged standing, frequent bending and stooping, and lifting more than 25 pounds frequently. [AR 158-59]. Her back condition was, thus, not disabling under MetLife's definitions.

Ms. Whitehouse's psychiatric issues included anxiety and depression which were responding to therapy. [AR 309, 320]. In March 2001, MetLife requested from Ms. Whitehouse additional information about her psychiatric conditions and their

3

treatability. [AR 171]. MetLife never received additional information and terminated Ms. Whitehouse's benefits. Ms. Whitehouse was aware that these records were necessary to her benefits determination and was greatly remiss is not providing them.

Finally, Ms. Whitehouse indicated in June 2001 that she had new medical evidence of a brain tumor. [AR 88]. MetLife's independent physician noted, however, that this evidence did not include information from her doctors about an inability to work. [AR 83-84]. In addition, he was of the opinion that any symptoms related to the tumor would respond favorably to treatment. [*Id*.]. Again, Ms. Whitehouse failed to provide proper and substantial evidence of her disability.

After careful consideration of the entire record of proceedings related to this case, this court finds that MetLife's decision was neither incorrect nor arbitrary and capricious. Accordingly, Ms. Whitehouse's motion for a judgment on the pleadings will be denied, the defendant's motion for summary judgment will be granted, and this action will be dismissed.

An appropriate order will follow.

    ENTER:

                                       s/Thomas Gray Hull
                                       THOMAS GRAY HULL
                                         SENIOR U. S. DISTRICT JUDGE